## EX PARTE LOUIS LERNER

In Banc, January 26, 1920.

1. **HABEAS CORPUS: Constitutionality of Law.** If a person is deprived of his liberty for any act not in contravention of an existing law, or if the act or ordinance under which he is held is unconstitutional, whether the offense denounced by it is classified as a misdemeanor or a felony, *habeas corpus* is available to restore him to his freedom.

2. **POWER OF CITY: Use of Streets.** The charter powers of the City of St. Louis to establish, locate, dedicate and supervise the highways of the city, and "to do all things whatsoever expedient for promoting the comfort, education, morals, peace, government, health, welfare, trade, commerce or manufacture of the city or its inhabitants," having their origin in the police powers of the State, are ample to authorize the city by legislative enactment, not only to establish and improve its streets, but to prescribe the terms and conditions upon which they may be used, subject only to the Constitution and laws of the State.

3. ———: ———: **Validity of Ordinance: Test Rule.** The validity of an ordinance enacted by the City of St. Louis in pursuance to its charter powers is to be tested by the rules of interpretation applicable to state legislative enactments.

4. ———: ———: **Violation of Ordinance: Civil or Criminal Proceeding.** While a prosecution for a violation of a city ordinance regulating the use of streets is technically a civil proceeding, yet in so far as it authorizes the imposition of a penalty upon conviction it partakes of the nature of a criminal action, and the validity of the ordinance is subject to the same rules of construction as is a criminal statute.

Ex parte Lerner. .

5. ——: ——: **Validity of Ordinance: Special Classes.** An ordinance regulating the use of streets, to be valid, must be general in its terms and uniform in its application to the class of persons or subjects to be affected. If it seeks to regulate citizens in the otherwise lawful use of their property or the conduct of their business,- the rules and conditions by it required to be observed must be so specified that all citizens may alike be required to comply with them.

6. ——: ——: ——: ——: **Soliciting Business.** An ordinance which seeks to punish any person who shall accost another on a street in front of any store and solicit such person to purchase, at another store, goods, wares or merchandise of like nature as those kept in such store, is invalid, since it does not apply to all persons or streets alike, but is special in its terms and local in its application, and contravenes the constitutional provision that "where a general law can be made applicable, no local or special law shall be enacted."

7. ——: ——: **Police Power: Public Welfare: Subject to Constitutional Inhibition.** A city cannot enact a police regulation which contravenes either the Constitution or a statute enacted by the Legislature. An ordinance enacted in the exercise of the police power must be general in its nature and applicable alike to all persons who may properly come within its purview. It is not sufficient that its enforcement would promote the general welfare, for instance, that it would facilitate the public use of streets; but, to avoid constitutional inhibition, it must be general in its terms and uniform in its application.

## *Habeas Corpus.*

PETITIONER DISCHARGED.

*Frumberg & Russell* for petitioner.

(1) The ordinance cannot be upheld as a valid exercise of the police power. 3 McQuillin, on Mun. Corp. sec. 893, p. 1895; Chicago v. Netcher, 183 Ill. 104; State ex rel. v. Ashbrook, 154 Mo. 375.; State v. Julow, 129 Mo. 163; Pinkerton v. Verberg, 78 Mich. 573. (2) Nor can it be upheld as an exercise of the power to regulate the use of the streets. State ex rel. v. Murphy, 134 Mo. 548; St. Louis v. Gloner, 210 Mo. 502.

*Charles H. Daues* and *E. Paul Griffin* for respondent.

(1) The City of St. Louis has the power, under the provisions of its charter, to regulate the use of its streets and sidewalks, to license and regulate all persons engaged in any business or occupation, to prohibit altogether or to license and regulate all practices or occupations detrimental or liable to be detrimental to the comfort, safety, convenience or welfare of the people and all nuisances, to prescribe limits within which occupations or practices liable to be nuisances or detrimental to the security or general welfare of the people may be conducted, and to do all things expedient for promoting the comfort, peace, government, welfare, trade, or commerce of the city or its inhabitants. Charter of the City of St. Louis, clauses 14, 23, 25, 26, 33, art. 1, sec. 1. (2) The Board of Aldermen is prima facie the sole judge of an ordinance, and hence the legal presumption is in favor of the validity of same, unless the contrary appears on the face of the ordinance or is established by proper evidence. Morse v. Westport, 110 Mo. 509; McQuillin, Mun. Ord. pp. 298-299; St. Louis v. United Railways Co., 263 Mo. 456. (3) All rights of every character whatsoever are held subject to the police power. St. Louis v. McCann, 158 Mo. 301; St. Louis v. Galt, 179 Mo. 168; Gundling v. Chicago, 177 U. S. 188; St. Louis v. Western Union, 149 U. S. 469; St. Louis Poster Adv. Co. v. St. Louis, 249 U. S. 269; St. Louis Gunning Adv. Co. v. St. Louis, 235 Mo. 99; Schenk v. United States, 249 U. S. 47; Frohwerk v. United States, 249 U. S. 46. (4) Ordinances similar to this one have been upheld, such as regulating hotel runners and drummers, hawking and peddling on streets, prohibiting persons from selling theatre tickets in front of theatres. 3 McQuillin on Mun. Corp. sec. 924; Chillicothe v. Brown, 38 Mo. App. 609, cited in 263 Mo. 457; People ex rel. Lange v. Palmutter, 128 N. Y. Supp. 426; In re Barmore, 163 Pac. 50; Williams v. State, 217 U. S. 79.

WALKER, C. J. —The writ of *habeas corpus* issued herein was directed to the Marshal of the City of St.

Louis, commanding him to have the body of the petitioner before this court to be dealt with as might be determined. The production of the body of the petitioner being waived, the return of the respondent, the Marshal, discloses that he holds the petitioner to answer a charge of having violated an ordinance of the City of Saint Louis which is alleged by the petitioner to be invalid. The body of said ordinance, with which we are alone concerned, is as follows:

"Any person who shall accost another person on a street or sidewalk in front of any store, house or place of business in the City of St. Louis, and solicit such other person to purchase any goods, wares or merchandise of a like nature as those kept for sale within said store, house or place of business at another store, house, or place of business, or shall solicit such other person to enter such other store, house, or place of business, for the purpose of examining or purchasing similar goods, wares, or merchandise, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten dollars nor more than one hundred dollars. Provided, however, that nothing herein shall be construed as prohibiting licensed peddlers acting within the scope of their license, nor members of bona-fide organizations doing lawful picket duty, nor as prohibiting anyone, whether as principal or agent, from soliciting trade upon the street or sidewalk in front of his own place of business." [Ordinance 30332, approved April 11, 1919.]

I. It was formerly ruled by this court that one held under process issued by a court having jurisdiction of the person and the offense, and where the person was in the custody of the proper officer, *habeas corpus* would not lie to test the constitutionality of the law under which the restraint was claimed to be authorized. This limitation upon the court's action first found expression in the early case In re Harris, 47 Mo. 164, which was affirmed in Ex parte Boenninghausen, 91 Mo. 301. The latter ruling, how-

*When Available.*

ever, overlooked an earlier case in the same volume, of
Ex parte Marmaduke, 91 Mo. 228, which held that the
court was not so limited in *habeas corpus* proceedings,
and which overruled without reference thereto the Har-
ris case.   In Ex parte Smith, 135 Mo. 223, the rule as
declared in the Marmaduke case was expressly approved
and has since been uniformly followed. [In re Flukes,
157 Mo. l. c. 127; Ex parte Neet, 157 Mo. l. c. 533 and
cases cited; Ex parte Lucas, 160 Mo. 218.] A cogent rea-
son for this later ruling rests in the fact that an uncon-
stitutional law is no law and its validity is therefore
open to attack as determinative of the question of juris-
diction at any stage of a proceeding, even in a criminal
case after conviction and judgment, the controlling requi-
site in the application of the rule being that the rec-
ord disclose that the petitioner is illegally restrained
of his liberty regardless of the stage of the proceedings
or nature of the charge, although it may be but a mis-
demeanor punishable only by a fine.   See the Smith, Neet
and Lucas cases, supra, and others in which the restraint
was upon charges for misdemeanors punishable as
stated.   The rule therefore may be regarded as settled
in this jurisdiction that if a person is deprived of his
liberty for any act not in contravention of an existing
law, or if the act under which he is held is unconstitu-
tional, *habeas corpus* is the proper remedy to restore to
him his freedom.   (Ex parte Neet, supra, and cases
cited.)

II.   The propriety of the proceeding having been es-
tablished, the sole question seeking solution is the va-
lidity of the ordinance.   The city charter, which consti-
tutes the immediate source of municipal legislative
power, is in this regard comprehensive in its
terms.   It is not deemed necessary to set these
out in detail, reference thereto being sufficient.

**Powers of City.**

[See CLAUSES 14, 23, 25, 26 of Article 1, Section 1, Char-
ter, City of St. Louis.]   To these more specific powers
which include the right to establish, locate, dedicate and

supervise the highways of said city is added the following general provision:

"To do all things whatsoever expedient for promoting or maintaining the comfort, education, morals, peace, government, health, welfare, trade, commerce or manufactures of the city or its inhabitants." [Sec. 33, art. 1, sec. 1.]

These provisions, which have their origin in the police power of the State (State ex inf. Barker v. Merchants Exchange, 269 Mo. 346), are ample to authorize the city by legislative enactment not only to establish and improve its streets but to prescribe the terms and conditions upon which they may be used (State ex rel. Subway Co. v. St. Louis, 145 Mo. l. c. 570; St. Louis v. W. U. Tel. Co., 149 U. S. 467), subject only to the Constitution and the laws of the State (Sec. 23, Art. 9, Mo. Constitution).

III.　The general power to enact an ordinance of the character here under review having been determined, its validity is to be tested by the rules of interpretation applicable to state legislative enactments. [St. Louis v. Const. Co., 244 Mo. l. c. 488; Carroll v. Campbell, 110 Mo. 557; Holman v. City of Macon, 155 Mo. App. l. c. 402.]

A prosecution for a violation of the ordinance in question, while technically a civil proceeding (Kansas City v. Neal, 122 Mo. 234; City of St. Louis v. Vert, 84 Mo. 204; City of St. Louis v. Schoenbusch, 95 Mo. 618; Parte Hollwedell, 74 Mo. 395; City of St. Louis v. Knox, 74 Mo. 79; Kansas City v. Clark, 68 Mo. 588), will, upon a conviction, authorize the imposition of a penalty and in thus far it partakes of the nature of a criminal action and the ordinance on which it is based is subject to the same rules of construction as a criminal statute, for it is not to be presumed that the State has delegated to a municipal assembly a greater right or conferred upon its acts a more liberal rule of interpretation than is applied to its own

*Civil Proceeding.*

legislative enactments. [Hays v. Poplar Bluff, 263 Mo. 516; Chicago etc. v. Salem, 156 Ind. 71; Zorger v. Greensburgh, 60 Ind. 1; Gates & Co. v. Richmond, 103 Va. 702.] Hence penal ordinances, like penal statutes, are to be strictly construed. [City of St. Louis v. Robinson, 135 Mo. l. c. 470; St. Louis v. Goebel, 32 Mo. 295; United States v. Hartwell, 6 Wall. 396.] This rule is to be applied when the purpose of construction is to relieve one charged with a violation of such an ordinance, a liberal construction being permissible otherwise to maintain its validity. [Swift v. Topeka, 43 Kan. 671, 8 L. R. A. 772.] Without reference in detail to the requisites of a valid criminal statute, it will suffice to say that an ordinance, to conform to same, must be general in its terms Special and uniform in its application to the class of Classes. persons or subjects to be affected. If the ordinance, therefore, seeks to regulate citizens in the otherwise lawful use of their property or the conduct of their business, the rules and conditions therein required to be observed must be so specified that all of the citizens may alike be required to comply with same; and no opportunity must be afforded by the terms of the ordinance for the exercise of discrimination between citizens so complying. [St. Louis v. Const. Co., 244 Mo. l. c. 489.] An analysis of the ordinance will enable it to be determined whether it possesses the infirmity indicated. Instead of prohibiting the general personal solicitation of persons for business purposes upon the streets and sidewalks of the city, its application is limited to the prohibition of such solicitations to persons in like lines of trade in front of the store or place of business of a competitor. Such a classification is neither general in its terms as to the persons to whom it is intended to apply or to the streets the use of which is attempted to be regulated.

Certainly if it be an ill requiring legislative supervision to regulate the solicitation of business upon the streets and highways within the limits prescribed in the ordinance, then it must follow that it is equally an ill

to solicit business elsewhere upon any of the thorough-fares of commercial activity in the city. The ordinance, therefore, cannot be otherwise construed than as special in its terms and local in its application, contravening the constitutional provision that "where a general law can be made applicable, no local or special law shall be enacted " (Sec. 32, art. 4, Con. Mo.), which salutary rule regulating legislation we have shown applies with equal force to an ordinance as well as a state law (St. Louis v. Const. Co., 244 Mo. l. c. 488).

IV.  The authority primarily for the enactment of ordinances of the character here under review must arise from the exercise of the police power. This power, as we have before indicated, exists in the State and is held to be delegated to municipal corporations to be exercised in the preservation of the health, safety, welfare and comfort of the citizens. While this classification may be extended by the more general one that whatever is contrary to public policy or is inimical to the public interest is subject to the police power (State v. Smith, 233 Mo. 242, 33 L. R. A. (N. S.) 179; Silva v. Newport, 150 Ky. 781, 34 Ann. Cas. 1914D, 613); and whether the ordinance is calculated to promote the object of its enactment or not, is one with which we have no concern if the municipal legislative will has been clearly expressed (State v. Clarke, 54 Mo. 17, 14 Am. Rep. 471; Crowley v. Christensen, 137 U. S. 86, 34 Law Ed. 620; Ex parte Hayes, 98 Cal. 555, 20 L. R. A. 701; Comm. v. Reinecke Coal Co., 117 Ky. 885), conformity to constitutional and statutory requirements is as necessary to the validity of ordinances of this character as others. More briefly put, a municipality cannot authorize that which either the organic law or the Legislature has forbidden. Under our system of jurisprudence, therefore, an ordinance enacted in the alleged or ostensible exercise of any of the well-defined purposes of the police power must be general in its nature and applicable alike to all who may properly come within its purview.

*Police Regulation.*

If, as is probable from its terms, the purpose of the enactment of the ordinance was upon the assumption that its enforcement would promote the welfare and add to the comfort of the public by affording more facilities for the use of the streets, then to avoid the constitutional inhibition it should have been general in its terms and uniform in its application; lacking these requisites its invalidity inheres despite the purpose of its enactment and will not stand the test of judicial construction. [Merchants Exchange v. Knott, 212 Mo. 616; Hewlett v. Camp, 115 Ala. 499; Flood v. State, 19 Tex. App. 584; Bohmy v. State, 21 Tex. App. 597.]

The invalidity of the ordinance having been determined and the right to enact one not burdened with the infirmities of that at bar being conceded, it becomes unnecessary to discuss whether personal liberty would be impaired by the enactment of a general ordinance; my individual opinion is that it would not.

In view of all of the foregoing the petitioner should be discharged and it is so ordered. All concur; *Blair*, *Williams* and *Goode, JJ.*, in result; *Woodson, J.*, absent.